**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LUCRETIA THOMAS,

     Plaintiff,

v.

COBB COUNTY SCHOOL DISTRICT,

     Defendant.

CIVIL ACTION FILE NO:

1:19-cv-00604-SCJ-JCF

## **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Lucretia Thomas hereinafter referred to as ("Plaintiff"), by and through the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the United States District Court for the Northern District of Georgia and responds in opposition to Defendant's Motion for Summary Judgment by showing this Honorable Court the following:

## **INTRODUCTION**

This matter is currently before the Court on Summary Judgment filed by Defendant in this action. The Defendant has moved for summary judgment based largely on incorrect inferences made from disputed facts. The Defendant mistakenly alleges that Plaintiff was terminated from employment based solely on her "abandonment" of her employment for eleven (11) days. Defendant included its

1

policy Administrative Rule GARH-R and explained that Plaintiff's absence was due to job abandonment. However, Defendant's brief fails to consider the disputed material fact that Plaintiff was directed by Latosha Hayes-Sperling and Tiffany Tisdel that if she were to show-up for work and/or Food Service Training on July 23, 2018, she would be sent back home due to her restriction. The Plaintiff will show that Defendant's version of facts and inferences are unreasonably based upon the disputed material facts in the record.

Additionally, Plaintiff has shown that based on the evidence in the record, Plaintiff has proven that Defendant infringed upon her rights under the Title II of the ADA, specifically, 42 U.S.C. § 12131, *et seq.* Furthermore, Plaintiff has shown that Defendant is a part of an education "program" and "activity" contemplated within the meaning of § 3a of the Civil Rights Restoration Act of 1987 and 34 C.F.R. §§ 106.2(h)(1)(i), (ii); and (h)(2)(i).

## STATEMENT OF ADDITIONAL MATERIAL FACTS

On October 3, 2014 Plaintiff was hired by Cobb County School District as a Food Service Assistant in the Food and Nutrition Services Department for Floyd Middle School located in Cobb County, Georgia. (Thomas Aff., ¶ 2; Plt's Complt. ¶ 12). The job description requirements included but not limited to the "… ability to repetitively lift items weighing a maximum of 50 pounds, walk & stand on cement floors for up to 7.5 hours, climb ladder, stoop, bend, lift and hands in water. (Thomas

2

Aff., ¶ 3; Thomas Depo. Ex. D4).   In addition to above, the job description included the ability to work extended periods in temperatures ranging from very hot to sub-zero. ( Id. at ¶ 4).   Plaintiff's duties also ranged from cleaning extensively, cooking, serving as a cashier, storing cooked food, lifting heavy kitchen equipment and putting away stock and cans.  (Thomas Aff., ¶ 5).

Plaintiff interviewed only with Andy Oter, who was a manager at Floyd Middle School.  (Thomas Depo., 39:5-17).  At that time Plaintiff did not have a need for any work restrictions and was subsequently hired.  (Thomas Depo., 39:20-25).  Plaintiff and Mr. Oter did not go over the job description for a food service assistant.  (Thomas Depo., 40:5-10).  Not at any time during Plaintiff's first year of employment did she inform her manager that she needed any work restrictions. (Thomas Depo., 40:15-19). In fact, Plaintiff received favorable job evaluations during her time as a Food Service Assistant.  (Tisdale Depo., Exs. 3,4).  The evaluations that Plaintiff received dealt directly with Plaintiff's essential job duties.  Plaintiff did not receive a formal copy of her job description until she was at orientation at Floyd Middle School.  (Thomas Depo., 41:11-22).  At the time of hire, Plaintiff did not have any physical limitations. (Thomas Depo., 42:4-10).

In addition to several other requirements of her job, Plaintiff was required to lift and rotate stock up to 50 pounds via the FIFO method.  (Thomas Depo., 45:12-21).  In 2014 when hired, Plaintiff was able to lift up to 50 pounds.  (Thomas Aff., ¶ 6).

3

However, when Plaintiff was lifting stock at or near 50 pounds she would receive assistance from a male co-worker or two females. (Thomas Depo., 46:10-23). Usually the heavy lifting at or near 50 pounds would only occur once a week. (Thomas Depo., 47:5-7). It would be a food delivery and the food service assistant would have to put the food into the shelving. (Thomas Depo., 47:8-14). During this time Plaintiff did not use a cart. (Thomas Depo., 47:18-21). Lifting was an everyday item; however, the heavy lifting would require "Steve" or two females to assist. (Thomas Depo., 54:2-14). Plaintiff would also prep, cook cashier, clean, and restock everyday. (Thomas Depo., 54:20-25).

Plaintiff's manager at the time harassed her, and claimed Plaintiff was moving too slowly and missed time from work due to doctors' appointments. (Thomas Depo., 61:20-62:5). Specifically, Plaintiff's manager claimed Plaintiff was serving the children too slowly. (Thomas Depo., 9-16). In addition, Plaintiff believed she was reaching her limit of off days. (Thomas Depo., 63:1-6).

In July of 2017, Plaintiff was re-assigned from Floyd Middle School to Riverside Primary School as a result of a formal complaint filed by Plaintiff against her then supervisor Israel Nwagwu for harassment, bullying, intimidation, and writing false reports. (Thomas Aff., ¶ 7). Plaintiff was transferred by Renee Trace who was the regional manager at the time. (Thomas Depo., 63:7-20). However, prior to

4

Plaintiff's transfer, she was involved in a work related accident.  (Thomas Depo., 64:1,2).

On January 11, 2017, Plaintiff was involved in a work related accident at Floyd Middle School. (Thomas Aff., ¶ 8; Thomas Depo., Ex. D6).  Plaintiff was on the job performing her duties when a large bowl landed on her left shoulder and left leg injuring her.  (Thomas Aff., ¶ 9).  Prior to the accident, Plaintiff suffered from chronic arthritis in her back and left shoulder blade. (Thomas Aff., ¶ 10; Thomas Depo., Ex. D6).  However, Plaintiff's chronic arthritis in her back and shoulder did not prevent Plaintiff from carrying out her job duties from November 2014 through January 2017.  (Thomas Aff., ¶ 11).

As a result of this work related accident, Plaintiff sought workers' compensation relief through the Cobb County School District.  (Thomas Aff., ¶ 12). Plaintiff reported her work place injury to her manager Mr. Nwagwo, but he failed to honor any request for workers' compensation, leaving Plaintiff no choice but to seek medical attention on her own.  (Thomas Aff., ¶ 13; Thomas Depo., 69:24-70:24).

On or about July 28, 2017, as  Plaintiff  transitioned into her new work assignment at Riverside Primary School, cafeteria manager, Tiffany Tisdale met with Plaintiff and went over the New Food Service Employee Orientation and Food Service Checklist.  (Thomas Aff., ¶ 14; Thomas Depo., Ex. D9).  At this meeting, Plaintiff disclosed to Ms. Tisdale about her problems with her shoulder and that she was

treating with her doctors for her shoulder injury.  (Thomas Depo., 75:12-19).  While working the 2017 through 2018 school year at Riverside Primary School, Plaintiff was not disciplined, nor placed on a performance improvement plan or suspended. (Thomas Depo., 79:16-25).  At that time Plaintiff did not disclose to Ms. Tisdel that she was under a work restriction not to lift more than ten  pounds.  (Thomas Depo., 79:11-15).  While at Riverside, Plaintiff missed numerous days from work for doctors appointment for her injured shoulder.  (Thomas Depo., 81:1-3; (Thomas Aff., ¶ 15).

On June 11, 2018, Plaintiff forwarded medical information to Cobb County School's Human Resources Benefits & Leaves Representative Tina Green. (Thomas Aff., ¶ 16, Tisdale Depo., Ex. 2).  Specifically, Plaintiff provided medical information that she "could not lift more than ten (10) pounds and that this restriction was permanent. (Thomas Aff., ¶ 17).  Plaintiff had sustained rotator cuff tears to her right and left shoulder.  (Thomas Depo., 114:11-15).  Plaintiff received this diagnosis on January 5, 2018.  (Thomas Depo., 115:1-9).

On August 15, 2018, Plaintiff filed an EEOC discrimination complaint stating that she requested a reasonable accommodation resulting from her medical condition on June 11, 2018. (Thomas Aff., ¶ 18; Thomas Depo., Ex. D23). On June 20, 2018 Plaintiff received a call from Ms. Tisdale, the cafeteria manager, stating that she needed to resign.  (Thomas Aff., ¶ 19).  Plaintiff responded that she had no intention of resigning.  (Thomas Aff., ¶ 20).   Plaintiff simply wanted a reasonable

accommodation so she could continue to perform her essential job duties which she had done for four (4) years previously. (Thomas Aff., ¶ 21). Plaintiff even suggested working in the capacity of cashier, which would prevent her from lifting more than ten (10) pounds, but Ms. Tisdale refused. (Thomas Aff., ¶ 22).

Again, on or around July 16, 2018, Plaintiff received a call from a Cobb County representative Diane Jones who advised that Plaintiff should resign from her job as well. (Thomas Aff., ¶ 23). On July 23, 2018, Plaintiff wanted to attend a Food Service Training, to which the Human Resources and Investigator Manager Latosha Hayes-Sperling told her if she were to show up she would be sent back home due to her restriction. (Thomas Aff., ¶ 24).

On July 31, 2018, Plaintiff's ADA Accommodation request was denied on the basis that the permanent medical restriction prevented Plaintiff from performing an "essential function" of the Food Service Assistance position. (Thomas Aff., ¶ 25).

Prior to the first day of school on August 1, 2018, Plaintiff telephoned Ms. Latosha Sperling, the Human Resources and Investigation Manager, about going back to work, and that she had not heard back from anyone regarding the positions she applied for. (Thomas Aff., ¶ 26). Defendant Sperling told Plaintiff that she had three days before she would be considered to have abandoned her job. (Thomas Aff., ¶ 27). Plaintiff reminded Ms. Sperling that she was told by Ms. Tisdale, the cafeteria

manager, that she was not to return to work due to her restriction.  (Thomas Aff., ¶ 28).

On August 13, 2018, Plaintiff received her separation letter citing job abandonment and violation of GARH-R regarding unauthorized and undocumented extended absence.  (Thomas Aff., ¶ 29).

When Plaintiff filed the request for and ADA accommodation, school was out, thus Plaintiff was not working but was still an employee.  (Thomas Depo., 127:12-17). In addition to not being able to lift items over ten pounds at work, Plaintiff was unable to lift items in her household.  (Thomas Depo., 128:17-25).  Plaintiff's husband would have to lift items in the household.  (Thomas Dep. 129:14-17).  Plaintiff has since found a new job since her termination from Cobb County Schools which doesn't require her to lift anything.  (Thomas Depo., 129:21-130:2).

Throughout the ordeal Plaintiff simply wanted a reasonable accommodation due to her medical condition which rendered her unable to lift items over ten pounds. (Thomas Aff., ¶ 30).  Plaintiff's disability is not just limited to work, but the disability has affected future employment and her ability to assist in household tasks.  (Thomas Aff., ¶ 31).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary

judgment has the burden of establishing the absence of the existence of an element

essential to the nonmoving party's case.  In such a situation, there can be no genuine

issue as to any material fact, since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The substantive law will

identify which facts are material, and the court must evaluate the evidence presented

by the substantive evidentiary burden.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248, 254 (1986).  In rebutting a motion for summary judgment, the court is not

required to simply accept Defendant's factual assertions, but should do so "only if

there is a genuine dispute to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776

(2007).

## ARGUMENT AND CITATION OF AUTHORITY

I.   **PLAINTIFF HAS ESTABLISHED THAT DEFENDANT DISCRIMINATED AGAINST HER UNDER THE ADA THUS ITS MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS A MATTER OF LAW.**

Plaintiff has established that Cobb County School District Discriminated

against her on the basis of physical impairment.  Defendant refused to provide

Plaintiff with a light duty assignment, but rather terminated her employment.  From

the time of its enactment in 1990, Title I of The Americans with Disabilities Act has

prohibited discrimination against individuals with disabilities and guaranteed them the same opportunities as everyone else to enjoy employment opportunities. Title I of the ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a).

The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A); Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir.1996). Said another way, the ADA forbids covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) she is disabled; (2) she was a 'qualified individual' at the relevant time…; and (3) she was discriminated against because of her disability." Id.; see also Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003); McDonnell Douglas Corp. v. Green, 411 U.S 792 (1973); Hillburn v Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).

To be a "qualified individual" with a disability under the ADA, an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

42 U.S.C. § 12111(8).  The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available. Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir.1996).  The plaintiff also bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him/her to perform the job's essential functions."  Lucas v Grainger, Inc., 257 F.3d 1249, 1255-56 (11th Cir. 2000).  However, the employer has the burden of persuasion on whether an accommodation would impose an undue hardship. Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183 (6th Cir.1996).

### a.  Violation of § 504 of the Rehabiliation Act:

Congress modeled the ADA's definition of "disability" after the one set forth in Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and in Section 504 cases courts had generally treated the determination of disability as a threshold issue and then focused primarily on whether unlawful discrimination had occurred. However, the decisions of the United States Supreme Court in Americans With Disabilities Act cases such as Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) (whether an individual is disabled must be determined with reference to corrective measures) and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) (interpreting the phrase "substantially limits" to mean limiting to a considerable or large degree, and the phrase "major life activities" to mean activities that are of central importance to daily life) lead to numerous lower court findings that

an individual's impairment did not constitute a disability; in many cases, courts never reached the question of whether discrimination had occurred.

In 2008, Congress passed the Americans with Disabilities Act Amendments Act with the specific intention of rejecting these precedents and providing "broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]." *See* 42 U.S.C. § 12102(4)(A).   The ADA first defines "disability" to mean:

> **(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> **(B)** a record of such an impairment; or
>
> **(C)** being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).   "Major life activities" are defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 29 C.F.R. §1630.2(i).

Doubtless because many of the pre-ADAAA cases had interpreted "substantially limits" narrowly in rejecting ADA coverage, that term now has a very lengthy definition that also includes its own "rules of construction" so that the term "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard [and] shall be interpreted and applied to require a degree of functional

limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." *Se* 29 C.F.R. §1630.2(j)(1).

In Mazzeo v. Color Resolutions Int'l, LLC, 736 F.3d 1264 (11th Cir. 2014) the 11th Circuit expressly addressed the post- ADAAA expansion of the ADA's scope of coverage. "Congress indicated that one of its purposes was to 'convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis' . . . and that 'the primary object of attention in cases brought under the ADA should be whether entities covered by the ADA have complied with their obligations[.]' . . . The ADA, therefore, now provides that the phrase "substantially limits" 'shall be interpreted consistently with the findings and purposes of the [ADAAA],' and that 'an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. . . .'" *Id.*, quoting 42 U.S.C. § 12101;  42 U.S.C. § 12102(4)(B);  and 42 U.S.C. § 12102(4)(D).

A covered entity under the ADA is defined as employer "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ." *See* 42 U.S.C. §12111(2) and (5).  Cobb County School District is certainly considered a covered entity. Defendant is prohibited from discriminating in regard to terms conditions, and privileges of employment.  *See* 42 U.S.C. §12112(a). As such, Defendant is required to provide reasonable accommodations for the "known

physical or mental limitations of an otherwise qualified individual with a disability"
unless it can demonstrate that doing so would impose an undue hardship on the
operation of its business . *See* 42 U.S.C. § 12112(b)(5)(A); see also <u>Morisky v.
Broward County</u>, 80 F.3d 445, 447 (11th Cir.1996)).

While the duty to provide reasonable accommodations only arises if a request for
accommodations is made <u>Gaston v. Bellingrath Gardens Home, Inc.</u>, 167 F.3d 1361,
1363 (11th Cir.1999)), courts have not identified "precisely what form the request
must take" <u>Holly v. Clairson Indus.</u>, 492 F3d 1247 (11th Cir. 2007)). "A request as
straightforward as asking for continued employment is a sufficient request for
accommodation." <u>Holly</u>, 492 F3d 1247, at fn.14, *see also* EEOC Enforcement
Guidance: Reasonable Accommodation and Undue Hardship Under the Americans
with Disabilities Act, 2 EEOC Compl. Man. (CCH), § 902, No. 915.002 (Oct. 17,
2002) ("EEOC Enforcement Guidance"), Question 1 ("An employee tells her
supervisor, `I'm having trouble getting to work at my scheduled starting time because
of medical treatments I'm undergoing.' This is a request for a reasonable
accommodation.").

A reasonable accommodation may include "making existing facilities used by
employees readily accessible to and usable by individuals with disabilities . . ., job
restructuring, part-time or modified work schedules, reassignment to a vacant
position, acquisition or modification of equipment or devices, appropriate adjustment

14

or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Once a covered entity has knowledge of the request for reasonable accommodations, "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation so that the parties can] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. 1630.2(o)(3).

To state a prima facie claim for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled; (2) she is a qualified individual; and (3) that she was discriminated against by way of the defendant's failure to provide a reasonable accommodation. McKane v. UBS Financial Services, Inc., 363 Fed. Appx. 678 (11th Cir. 2010). "[T]he term `discriminate' includes . . . not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under

the ADA, so long as that individual is "otherwise qualified," and unless the employer can show undue hardship.

In the present case, Plaintiff has satisfied all three (3) required prongs to make out her prima facie case.  Defendant discriminated against Plaintiff on the basis of disability because it failed to make a reasonable accommodation to Plaintiff during her period of disability.  Consequently, Defendant's motion for summary judgment must be denied as a matter of law.

Prior to Plaintiff's request for reasonable accommodation on June 11, 2018 for her torn rotator cuffs she was a "qualified person" who had been performing the essential functions of her job without accommodations. The documentation submitted by Plaintiff for a reasonable accommodation established Plaintiff as a "qualified person with a disability" as defined in the ADA, since it demonstrated that she had a "physical impairment" which was "affecting one or more body systems" (musculoskeletal) and which substantially limited the major life activities of Plaintiff including but not limited to lifting. Defendant has produced no evidence to the contrary.

Defendant instead of providing Plaintiff with a simple accommodation of having a co-worker assist Plaintiff in lifting items over ten pounds, Defendant instructed Plaintiff not to return to work and subsequently terminated her employment. Defendant Cobb County School District simply did not provide Plaintiff with the

16

accommodation.  When Plaintiff attempted to return to work for training on July 23, 2018, she was told that if she showed up she would be sent back home.  Again, Defendant has produced no evidence to demonstrate otherwise.

It must be emphasized that Plaintiff, following Cobb County policy, identified applicable reasonable accommodations, i.e. having a co-worker lift items greater than ten pounds to the appropriate Human Resources personnel.  However, these requests were summarily denied with no real explanation, discussion, or alternatives suggested other than applying for other positions.  There was nothing in place that remotely resembled an "interactive process" to "determine and identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. 1630.2(o)(3). In fact, Plaintiff was simply told to resign and not to return to work.  Defendant has produced no evidence conflicting with or disproving any of the above.

Defendant admittedly denies Plaintiff's request for a reasonable accommodation because the medical restriction prevented Plaintiff from an essential job function.  (Ex. 6 to Tisdale Depo.).  However, Plaintiff was clear that lifting was only a small part of her job duties. Defendant has failed to produce any admissible evidence other than conjecture and innuendo that lifting over fifty pounds is an essential job function.  In fact, before her request for a reasonable accommodation, prior to Plaintiff becoming disabled, she would seek assistance from a "male" who would tell her to "stand back"

and he would lift the stock. (Thomas Depo., 46:10-20).  If the male wasn't around, two females would help Plaintiff lift stock.  (Thomas Depo., 46:21-23).  Plaintiff would only be responsible for lifting a case of six five-pound cans of food once a week. (Thomas Depo., 47:1-7).  Defendant can not produce any record evidence that Defendant ever seriously considered Plaintiff's request for reasonable accommodations at all, much less any hardship the provision of any specific or alternative accommodations might have caused. Moreover, the specific accommodations requested by Plaintiff were reasonable on its face.

Similarly, Defendant cannot argue that Plaintiff's requested accommodations would not have enabled her to perform the essential functions of her job, because Plaintiff had already demonstrated the utility of the requested accommodations as stated above.   Without the accommodations, Plaintiff "could" still perform the essential functions of her job, but at a burden to her physically– the very kinds of burdens suffered by disabled persons that the ADA was designed to eliminate. The accommodations Plaintiff requested would have relieved her of these burdens without impacting her performance of the essential functions of her job.

Unfortunately, when Plaintiff requested these reasonable accommodations, she was told by her Supervisor, her Manager, and Human Resources that the only alternative available to her was resignation of her employment.  Plaintiff has provided evidence clearly demonstrating that she was a "qualified person with a disability" as

defined in the ADA. Plaintiff has also provided evidence clearly establishing that Defendant, Cobb County School District discriminated against Plaintiff on the basis of disability as defined in the ADA by failing to meet the ADA's requirement that it make reasonable accommodations to her known physical limitations. Accordingly, Defendant's motion for summary judgment must be denied as a matter of law because Plaintiff has carried her burden of proving that such an accommodation exists and her medical restriction did not prevent her from performing an essential function of the food service assistant position.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BASED ON DEFENDANT'S VIOLATION OF SECTION 504 OF THE REHABILITATION ACT.

The standards applicable to consideration of Defendant's violations of Title I of the ADA are the same as those applicable to consideration of Defendant's violation of Section 504.  "In any investigation, compliance review, hearing or other proceeding, the standards used to determine whether section 504 has been violated in a complaint alleging employment discrimination shall be the standards applied under title I of the ADA and the provisions of sections 501 through 504, and 510, of the ADA, as such sections relate to employment. Section 504 agencies shall consider the regulations and appendix implementing title I of the ADA, set forth at 29 CFR part 1630, and case law arising under such regulations, in determining whether a recipient of Federal financial assistance has engaged in an unlawful employment practice." 29 C.F.R. §1640.12.

Accordingly, Plaintiff hereby incorporates the foregoing herein, and asserts the same arguments that Defendant's motion for summary judgment be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion for summary judgment.

Respectfully submitted this 30th day of April, 2020.

**JAMES E DEARING, JR., PC**


***/s/ James E. Dearing, Jr.***
**JAMES E. DEARING, JR.**
Georgia Bar No.: 215090
*Attorney for Plaintiff*

1596 W. Cleveland Avenue, Suite 102
East Point, Georgia 30344
(p) 404.870.0010
Email: Jdearing@jed-law.com

## <u>CERTIFICATE OF COMPLIANCE WITH N.D. GA. LOCAL RULE 5.1B</u>

This is to certify that this pleading was created in Times New Roman 14-point

font in accordance with Northern District of Georgia Local Rule 5.1B

Respectfully submitted this 30th day of April, 2020.

**JAMES E DEARING, JR., PC**


***<u>/s/ James E. Dearing, Jr.</u>***
**JAMES E. DEARING, JR.**
Georgia Bar No.: 215090
*Attorney for Plaintiff*

1596 W. Cleveland Avenue, Suite 102
East Point, Georgia 30344
(p) 404.870.0010
Email: Jdearing@jed-law.com

## **CERTIFICATE OF SERVICE**

This is to certify that we have this day filed the within and foregoing **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** upon all parties to this matter using the CM/ECF filing system which will automatically send a copy of same to all counsel of record addressed as follows:

Randall C. Farmer
Gregory, Doyle, Calhoun & Rogers, LLC
49 Atlanta Street
Marietta, Georgia 30060
(770) 422-1776
rfarmer@gregorydoylefirm.com

Respectfully submitted this 30th day of April, 2020.

**JAMES E DEARING, JR., PC**

**/s/ James E. Dearing, Jr.**
**JAMES E. DEARING, JR.**
Georgia Bar No.: 215090
*Attorney for Plaintiff*

1596 W. Cleveland Avenue, Suite 102
East Point, Georgia 30344
(p) 404.870.0010
Email: Jdearing@jed-law.com